**Bob McGOWEN and Barbara McGowen,
Appellants,**

v.

**TRI-COUNTY GAS COMPANY, Inc., a Missouri Corporation, Clifford Peck, d/b/a Peck Oil Company, and O. R. Summers, Respondents.**

No. 56179.

Supreme Court of Missouri,
Division No. 1.

July 17, 1972.

Neale, Newman, Bradshaw & Freeman, Warren S. Stafford, Joseph A. Bohrer, Springfield, for appellants.

Buell F. Weathers, Kenneth T. Walter, Mann, Walter, Burkhart & Weathers, Springfield, for defendant-respondent Tri-County Gas Co., Inc.

Woolsey, Fisher, Clark & Whiteaker, Russell G. Clark, Springfield, for defendant-respondent Clifford Peck, d/b/a Peck Oil Co.

LAURANCE M. HYDE, Special Commissioner.

Action for damages for $100,000 for personal injuries to plaintiff Bob McGowen and for $25,000 for his wife for loss of consortium. The court dismissed plaintiffs' third amended petition apparently for failure to state a cause of action. There was no ruling on defendants' motions to require the petition to be made more definite and certain. Plaintiffs' request to file an amended petition was denied. Plaintiffs have appealed and contend their petition was sufficient to show they were entitled to rely on the doctrine of res ipsa loquitur. We reverse and remand with directions.

Plaintiffs' petition stated their claim as follows:

"4. On and prior to November 30, 1965, the defendant Tri-County Gas Company, Inc., was engaged in the sale and distribution of propane gas to citizens and residents of Wright County, Missouri. And, in said capacity, said defendant had installed and owned a propane gas distribution system for a filling or service station located at 403 West Third Street, Mtn. Grove, Missouri, * * *.

"5. On or prior to November 30, 1965, defendant Clifford Peck, d/b/a Peck Oil Company, was a Phillips 66 Oil Company jobber and, as such, was the lessee of the service station hereinabove mentioned in paragraph numbered '4'. As the lessee of said station, defendant Peck had the right, and did, in fact, exercise such right to control, supervise, and inspect the said service station premises.

"6. The defendant O. R. Summers was the owner of said abovementioned service or filling station and, on or about June 27, 1963, he leased said premises to Phillips Petroleum Company under a written lease whereby defendant Summers, among other provisions, the exact nature of which is unknown, agreed, at his sole cost and expense and without cost or expense to les-see, to maintain the premises in good condition and keep all buildings, driveways and equipment thereon owned by lessor in good repair.

"7. Thereafter, Phillips Petroleum Company sublet said premises to defendant Clifford Peck, a true copy of said lease is attached hereto, marked Exhibit A, and made a part hereof. Defendant Clifford Peck was in possession of said premises pursuant to said lease on and prior to November 30, 1965.

"8. Thereafter, defendant Clifford Peck and Bob Sympson made an oral agreement whereby Bob Sympson was to operate said 'filling station' located on said premises under the following terms: Defendant Clifford Peck was to retain the right of control and Sympson was to buy all oil and gas from defendant Clifford Peck. Bob Sympson rented the Phillips Petroleum Company light fixtures and credit card stamper from defendant Clifford Peck. Defendant Clifford Peck retained the right to inspect the premises and see that everything was kept in order, and, if not, he retained the right to remove Bob Sympson at his pleasure. Bob Sympson could not sell anything except Phillips Petroleum Company products purchased from defendant Clifford Peck except other brands of oil if it was kept in the back room. Defendant Clifford Peck retained the right to control the premises and activities thereon as between he and Bob Sympson except defendant Clifford Peck had no right to control the price of the gasoline that Bob Sympson sold. Defendant Clifford Peck also retained all rights given to him under Exhibit A.

"9. On November 30, 1965, the abovementioned service or filling station was equipped with certain sewers and also a gas heater which was then located in the office of said service or filling station. Said gas heater was burning and emanating a flame at the time of the explosion, hereinafter mentioned.

"10. Said service or filling station, the sewer system, gas heater, and propane gas distribution system, as well as the service station premises, were under the joint and concurrent ownership, control, supervision, charge, management or right of control of the defendants Clifford Peck and O. R. Summers, and each of them. Further, defendant Tri-County Gas Company, Inc., had concurrent ownership, control, management or right of control of said propane gas distribution system and said gas heater, along with defendants Clifford Peck and O. R. Summers.

"11. At approximately 7:00 p. m. on November 30, 1965, the plaintiff was present in the station as an employee of Bob Sympson and was standing in the 'bay area' of the abovementioned service station when a terrific explosion and fire occurred from which the plaintiff sustained serious, grievous and permanent bodily injuries, as hereinafter pleaded.

"12. The defendants negligently permitted gas or gas vapors to accumulate in said filling station, which fumes had emanated from the said gas distribution system and a certain propane gas heater which was located in the office of the said station. The accumulation of said gas caused a dangerous and highly explosive condition to exist in said filling station, which was dangerous to those persons in and around the said station, including plaintiff Bob McGowen, and the defendants negligently allowed said gas or gas vapors to explode and catch fire.

"13. Plaintiff had no knowledge of the mechanisms or operations of the said gas heater and the propane gas and sewer distribution system, connected therewith or the operation thereof, and had no control over or right to control same. Further, defendants have superior knowledge of the cause of said explosion and plaintiff Bob McGowen does not know nor does he have means of knowing the precise cause of said explosions."

Briefs have been filed only by Peck and Tri-County Gas Company. Peck says the facts pleaded fail to state circumstances from which negligence could be inferred from the mere occurrence of a fire and explosion and that the allegations concerning control or right of control are vague, contradictory and repugnant. Peck states it has been said: " 'The rule of *res ipsa loquitur* is infrequently applied to cases involving fires, and to a lesser extent to explosion cases. [Citing cases.] The reasons are not difficult to perceive. The cause of a fire is generally unknown, fires commonly occur where due care has been exercised as well as where due care was wanting. Where a fire originates on a defendants' premises, that alone is not evidence that it was started by the defendant, nor that the fire was caused by any negligence on its part.' " Kansas City Stock Yards Co. v. A. Reich & Sons, Mo.Sup., 250 S.W.2d 692; see also Hendricks v. Weaver, Mo.Sup., 183 S.W.2d 74; Kapros v. Pierce Oil Corp., 324 Mo. 992, 25 S.W. 2d 777; Rede v. St. Louis County Gas Co., Mo.App., 254 S.W. 415; Anderton v. Downs, Mo.App., 459 S.W.2d 101. However, res ipsa loquitur has been held applicable in such explosion cases as Baker v. Thompson-Hayward Chemical Co., Mo. App., 316 S.W.2d 652; Carter v. Skelly Oil Co., 363 Mo. 570, 252 S.W.2d 306; Hiell v. Golco Oil Co., 137 Ohio St. 180, 28 N.E.2d 561; Kleinman v. Banner Laundry Co., 150 Minn. 515, 186 N.W. 123, see also annotation 23 A.L.R. 484; Chiles v. Ft. Smith Commission Co., 139 Ark. 489, 216 S.W. 11, annotation 8 A.L.R. 500.

Plaintiffs rely mainly on Carter v. Skelly Oil Co., 363 Mo. 570, 252 S.W.2d 306; Kelly v. Laclede Real Estate & Inv. Co., 348 Mo. 407, 155 S.W.2d 90; Walsh v. Southwestern Bell Tel. Co., 331 Mo. 118, 52 S.W.2d 839; Barb v. Farmers Insurance Exchange, Mo.Sup., 281 S.W.2d 297, in support of their action against multiple defendants, pointing out that we have held: " * * * the fundamental test of the applicability of res ipsa loquitur 'that

the instrumentality be under the management and control of the defendant does not mean, or is not limited to, actual physical control, but refers rather to the right of control at the time the negligence was committed.' McCloskey v. Koplar, supra, [329 Mo. 527], 46 S.W.2d [557], at page 560; Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 238 S.W.2d 674, 677." Littlefield v. Laughlin, Mo.Sup., 327 S.W.2d 863, 865.

Defendant Tri-County Gas says that plaintiffs' petition fails to show the gas heater and premises and facilities mentioned were in the exclusive control of the defendants sued, because plaintiff McGowen's employer, Bob Sympson, who it is alleged was operating the station, was not made a party defendant. It cites Cantley v. Missouri-Kansas-Texas R. Co., 353 Mo. 605, 183 S.W.2d 123, 130 in which we said: " '[T]he doctrine cannot be invoked where there is a divided responsibility and the accident is due in part to the act of a third party over whom defendant has no control, or where the injuring agency is partly or entirely under the control or management of plaintiff.' " Also cited are Hart v. Emery, Bird, Thayer Dry Goods Co., 233 Mo.App. 312, 118 S.W.2d 509, 511; Poulsen v. Charlton, 224 Cal.App.2d 262, 36 Cal.Rptr. 347; Gershner v. Gulf Refining Co., La.App., 171 So. 399; Corcoran v. Banner Super Market, Inc., 20 A.D.2d 552, 245 N.Y.S.2d 175; see also 65A C.J.S. Negligence § 220.15, p. 571; Willis v. Terminal Railroad Association of St. Louis, Mo.Sup., 421 S.W.2d 220.

Plaintiff excuses his failure to join his employer, Bob Sympson, saying concurrent tort feasors may be sued either jointly or severally, citing such cases as Berryman v. People's Motorbus Co. of St. Louis, 228 Mo.App. 1032, 54 S.W.2d 747, 749; Gray v. Kurn, 345 Mo. 1027, 137 S.W.2d 558. These are not res ipsa cases where the control of the defendants sued is an important factor. However, it does not appear from the petition whether or not Bob

Sympson was present or what he had to do with the operation of the gas heater. This could be important when the evidence is heard.

Tri-County argues the petition does not sufficiently show the instrumentalities involved were under its management and control or that it possesses superior knowledge or means of information as to the cause of the occurrence. It says the allegations against it are only conclusions and do not state facts showing the gas distribution system and gas heater were under its ownership, control or right of control and do not say it had any control or right of control of the sewer system. (The part of the sewer system in the occurrence is not clear.) It cites Rede v. St. Louis County Gas Co., Mo.App., 254 S.W. 415, holding res ipsa loquitur inapplicable to an explosion by leaking gas 36 hours after repairs by defendant to stop a leak from a claimed defective pipe and meter. It also cites Niswander v. Kansas City Gas Co., Mo. App., 181 S.W.2d 165, where it was said the cause of a gas explosion in that case was left to speculation. Tri-County also seeks to distinguish Carter v. Skelly Oil Co., supra, mainly relied on by plaintiff, saying the allegations therein stated affirmative facts sufficient to invoke the doctrine.

In Carter (252 S.W.2d l. c. 307) it was alleged that Skelly owned and operated the service station and that the other defendants were its agents in the operation of the station. The petition stated the Skelly agents drove plaintiff's car into a closed room to be raised on their grease rack, drained gasoline from the car onto the concrete floor of the room equipped with a kerosene heating stove and were pushing the gasoline along the floor with a squeegee when the explosion occurred. We held the petition sufficient to state a cause of action under res ipsa loquitur. In this case, it is alleged that Tri-County installed and owned the gas distribution system for the station and had the right of control with Peck and Summers. Carter is some

authority for making a ruling on defendants' motions herein to make more definite and certain by (252 S.W.2d 1. c. 309) noting no such motion was filed in that case and remanding for such action as the parties might desire to take.

▆ A. L. I. Restatement of Torts 2d, § 328 D Res Ipsa Loquitur in part states:

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff."

Comment f. states that the plaintiff has the burden of proof to make the negligence point to the defendant and "where there is no doubt that it is at least equally probable that the negligence was that of a third person, the court must direct the jury that the plaintiff has not proved his case." Comment g. states that the plaintiff usually sustains his burden of proof "by showing that a specific instrumentality which has caused the event, or all reasonably probable causes, were under the exclusive control of the defendant. Thus the responsibility of the defendant is proved by eliminating that of any other person." The comment continues: "It is not, however, necessary to the inference that the defendant have such exclusive control; and exclusive control is merely one way of proving his responsibility. He may be responsible, and the inference may be drawn against him, where he shares the control with another, as in the case of the fall of a party wall which each of two landowners is under a duty to inspect and maintain. He may be responsible where he is under a duty to the plaintiff which he cannot delegate to another, as in the case of a landlord who leases premises dangerous to persons on the public highway, which his tenant undertakes to maintain. * * * Exclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a res ipsa loquitur case. The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against." As to multiple defendants see 58 Am.Jur. Negligence § 493 p. 72, § 503 p. 85, § 508 p. 94; annotation 38 A.L.R.2d 905; Prosser Law of Torts § 39, p. 225; 65A C.J.S. Negligence § 220.15, p. 577. Certainly, when it is sought to hold two or more defendants, joint control or right of control must be shown to be entitled to judgment against both. See Willis v. Terminal Railroad Association of St. Louis, Mo.Sup., 421 S.W.2d 220.

▆ We consider the allegations of the petition sufficient to show a probable cause for the explosion of the gas heater, burning in an enclosed room in which gas accumulated, to be one which defendants Tri-County Gas and Peck, either or both, were under a duty to anticipate and guard against, if they had sufficient control or right of control of the heater. It is stated Tri-County installed and owned the gas distribution system for the station and that it had concurrent ownership, control, management or right of control of the propane gas distribution system with the other defendants. The petition states Peck had the right to control, supervise and inspect the station; that he retained the rights of control given him under the Phillips lease; and that the sewer system, gas heater, propane gas distribution system and station premises were under joint and concurrent ownership, control, supervision, management and right of control of Peck and Summers. Of course, evidence would have to be produced to so show to entitle plaintiffs to a verdict against these defendants;

and it would not be unreasonable to require plaintiff to make a more definite statement of the facts upon which its claims of their operation and control of the gas heater are based. The petition does not show who operated and took care of the heater or did so on the day of the explosion. The Carter case (252 S.W.2d 306) relied on did state the activities under way and who was involved in them. In Barb (281 S.W.2d 297) it was shown who stacked the boxes that fell and who permitted them to remain in such condition. The situation as to the owner Summers, who leased to Phillips which subleased to Peck who sublet to Sympson, must be clarified to show liability on his part.

The judgment is reversed and remanded with directions to set aside the judgment dismissing the action and to reinstate the petition and for such further action as the parties may desire to take in accordance with the views expressed herein.

PER CURIAM:

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the Court.

HOLMAN, P. J., SEILER, J., and NORMILE, Special Judge, concur; BARDGETT, J., not sitting.